O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZARIO AGUILAR; GREGORIO NICANOR; HUGO SANDOVAL; JOSE SOLANO; OSCAR URBINA; LUIS ALVAREZ; SERGIO ALVAREZ; LOUIS AGUILAR; JOSE AMARO; ARMANDO CARLOS, ALEJANDRO CASILLAS, OLEGARIO DURAN, JOSE LUIS HERRERA, ANTONIO HINOJOSA, GILBERTO HINOJOSA, FERMIN MENDOZA, DOLORES MEZA; ERIC NICANOR, FRANCISCO NICANOR, MAGDALENO NICANOR, MANUEL SOLANO, JORGE D. RIVAS, JOSE GUADALUPE TORRES and MIGUEL ZAMORE,<br><br>          Plaintiff,<br><br>     v.<br><br>MEGA LIGHTING, INC., d/b/a MEGA WAY ENTERPRISES, a California corporation; PIERRE SALIM SAAD, an individual; SAM KASBAR, an individual; CHARBEL RAMEH, an individual; and HECTOR ZAVALA, an individual,<br><br>          Defendants. | Case No. CV 08-07313 DDP (JTLx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFFS' REQUEST FOR DISCOVERY**<br><br>[Motions filed on February 11 and 22, 2009, Dkt. Nos. 39, 50] |

**I.   BACKGROUND**

Plaintiffs are 25 former employees of Defendants Mega Lighting, Pierre Saad, and Sam Kasbar (collectively, "Mega Employer"[1]).  Defendants Charbel Rameh and Hector Zavala worked for the Mega Employer in a managerial capacity (collectively, "Mega Defendants"; the persons sued - Saad, Kasbar, Rameh, and Zavala - will be referred to as the "Individual Mega Defendants").[2]

Mega Lighting is a California corporation licensed by California to perform landscaping.  (FAC ¶ 40.)  Mega Lighting's business is the construction and maintenance of landscaping for public and private gardens, including on "public works" projects as defined by California Labor Code § 1720.  (FAC ¶ 41.)  On public works projects, a "prevailing wage" must be paid to all workers, pursuant to California Labor Code § 1771.[3]  (FAC ¶ 41.) Additionally, on public works projects an employer is required to submit to the contracting public agency a certified payroll record, under penalty of perjury, listing the employees on a project, the hours worked each day, and wages (among other things).  Cal. Lab. Code § 1776(a).

---

[1] Plaintiffs allege that Mega Lighting is an alter ego of Saad and Kasbar.  (FAC ¶ 35-37.)

[2] The final defendant, North American Specialty Insurance Company ("NASIC"), insures payment bonds; and Plaintiffs have sued it to enforce the payment of wages on the projects where Plaintiffs worked.  NASIC filed a separate answer to Plaintiffs' complaint on December 26, 2008 and did not join the present motion to dismiss.

[3] Labor Code § 1771 provides that on public works projects of greater than $1,000, "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed" must be paid.  Cal. Lab. Code § 1771.

2

Plaintiffs list seventeen individual public works projects performed by Mega Lighting, including for the Cities of Brea, Huntington Beach, Riverside, Fontana, West Covina, Pomona, Chino, Montebellow, Fullerton, Rancho Cucamonga, Maywood, Paramount, Perris, Rialto, and Newport Beach. (FAC ¶ 41.) Plaintiffs allege that the Mega Employer violated various labor laws, including deliberately failing to pay them the prevailing wage on these public works projects by refusing to compensate them for all hours worked. (FAC at 11-12.) Plaintiffs further allege that the Mega Employer reported fraudulently reduced hours to public agencies of the above cities, in order to receive payment from the agencies without penalty. (FAC ¶ 59.)

In addition, Plaintiffs allege that when they sought advice of counsel regarding legal action, the Individual Mega Defendants retaliated against them by, among other things, delaying paychecks, threatening Plaintiffs with bodily harm and termination, and actually terminating Plaintiffs' employment. (FAC ¶ 72.) Plaintiffs also allege that the Individual Mega Defendants used "extortion" to obtain Plaintiffs' waivers of their right to legal remedies. (FAC at 14-17.)

Plaintiffs allege fourteen different claims in their First Amended Complaint ("FAC"), three of which are federal. The Mega Defendants now move to dismiss Plaintiffs' three federal claims:

> 1) against the Individual Mega Defendants - mail and wire fraud, extortion, and racketeering, in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 et seq.;
> 2) against the Mega Employer - failure to pay overtime and minimum wage, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b);

1      3) against the Mega Employer - retaliation for exercising
       protected rights, under the FLSA, 29 U.S.C. § 215(a)(3).

(FAC 17-23.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Under Rule 12(b)(6), a complaint is dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a 12(b)(6) motion, "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  A court properly dismisses a complaint under Rule 12(b)(6), based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." Baliesteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  The plaintiff's obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation omitted).  However, the complaint must state "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974.  A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." Id. at 1964 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### B.   Evidentiary Issues and Application for Discovery

Generally, a district court "may not consider any material beyond the pleadings" (e.g., facts presented in briefs, affidavits, or discovery materials) on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.10 (9th Cir.

4

1989). Plaintiffs present a declaration with contracts signed by Mega Lighting and various public agencies, which is relevant to prove jurisdictional requirements under the FLSA and RICO. The Court declines to consider this evidence on this motion.

The Mega Defendants also ask the Court to consider exhibits outside the pleadings, in particular Mega Lighting's contractor's license and the notice of related cases filed in the instant action by Plaintiffs. The Court declines to take judicial notice of the Mega Defendants' exhibits.

Lastly, Plaintiffs have also filed a request for limited discovery under Federal Rule of Civil Procedure 56(f) in order to fix any jurisdictional or other pleading deficiencies in their complaint. As discussed below, the Court denies Defendants' motion to dismiss and, accordingly, the Court also denies Plaintiff's request for discovery under Rule 56(f).

**III. DISCUSSION**

A.   Jurisdiction

The Mega Defendants first argue that there is no statutory jurisdiction over their conduct under RICO and the FLSA, because Mega Lighting's activities are local and do not affect interstate commerce. Specifically, the Mega Defendants allege that Mega Lighting performs only "asthetic" and "horticultural" improvements by installing sprinklers, plants, and foliage, and therefore creates nothing that enters the "stream of commerce." (Mot. 6-7.) The Court will address this argument under each statute.

1.   RICO

RICO grants jurisdiction over "any enterprise engaged in, or the activities of which affect[] interstate or foreign commerce,"

1  which is used for "a pattern of racketeering activity."  18 U.S.C.
2  § 1962(c).  RICO requires that the activities of the "enterprise,"
3  not each RICO "predicate act," affect interstate commerce.  <u>United</u>
4  <u>States v. Rone</u>, 598 F.2d 564, 573 (9th Cir. 1979).  A "minimal" or
5  "de minimis" effect on interstate commerce is sufficient to
6  establish jurisdiction in a civil RICO prosecution.  <u>United States</u>
7  <u>v. Juvenile Male</u>, 118 F.3d 1344, 1348 (9th Cir. 1997)(citing <u>United</u>
8  <u>States v. Rone</u>, 598 F.2d 564, 573 (9th cir. 1979).  A minimal
9  effect on interstate commerce is demonstrated by "proof of a
10 probable or potential impact."  <u>Id.</u> at 1349.
11      The Mega Defendants argue that they are not engaged in
12 interstate commerce, because they are involved in local landscaping
13 work in California.  However, Plaintiffs provide sufficient
14 allegations of the Mega Employers' probable impact on interstate
15 commerce to justify jurisdiction under RICO.  For example, Mega
16 Lighting's payment bonds are provided by Defendant NASIC, which is
17 a New Hampshire insurance company.  (FAC ¶¶ 39, 185.)
18 Additionally, agriculture and landscaping are activities which
19 affect "interstate commerce" in the aggregate.  <u>Wickard v. Filburn</u>,
20 317 U.S. 111 (1942); <u>United States v. Frega</u>, 179 F.3d 793, 800 (9th
21 Cir. Cal. 1999)(stating that "RICO is aimed at activities which, in
22 the aggregate, substantially affect interstate commerce").  The
23 Court also notes that a significant number of Mega Lighting's
24 landscaping projects were on streets and meridians connecting
25 interstate commerce.  (<u>See</u> FAC ¶ 41.)
26     As such, the Court finds that the jurisdictional requirements
27 of RICO have been met.
28          2.   <u>FLSA</u>

FLSA claims are based on violations of the statute's overtime and minimum wage requirements, which apply to any employee "engaged in interstate commerce." 29 U.S.C. § 207(a). An employee is engaged in interstate commerce where the "enterprise" he or she works for is "engaged in the production of goods for commerce." 29 U.S.C. § 207(a)(1). An "enterprise engaged in the production of goods for commerce" is one which:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)

29 U.S.C. § 203(s)(1)(A)(i)-(ii).

For the reasons stated above, the Court finds that the Mega Employer is engaged in interstate commerce for the purposes of the FLSA. The Mega Defendants' primary argument against jurisdiction is based on caselaw[4] interpreting jurisdiction under the FLSA prior to its amendment, which did not have the current statute's language including "<u>employers</u> engaged in commerce or in the production of goods for commerce." See 29 U.S.C. § 207(a)(1)(emphasis added).

Accordingly, the Court finds that there is jurisdiction under the FLSA.

B.  RICO

Plaintiffs' RICO claim are brought against the Individual Mega Defendants, and not the corporate entity Mega Lighting (which is the allleged "enterprise"). A civil RICO action may be brought by

---

[4] See <u>Goldberg v. Wade Lahar Constr. Co.</u>, 290 F.2d 408 (8th Cir. 1961).

"[a]ny person injured in his business or property by reason of a violation of section 1962 of Title 18." 18 U.S.C. § 1964(c). Section 1962 prohibits both "conducting an enterprise through a pattern of racketeering" and a "conspiracy" to violate RICO. 18 U.S.C. § 1962(c)-(d). The elements of a civil RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, (5) causing injury to the plaintiff's business or property. Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016, 1021 (9th Cir. 2001). The fifth element further requires that the plaintiff (1) show the injury was proximately caused by the fraudulent conduct and (2) show concrete financial loss by documenting the amount of damages. Id.

The Mega Defendants argue that Plaintiffs have not sufficiently alleged fraud under RICO, as required by Rule 9(b). See Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)(finding the particularity requirements of rule 9(b) apply to RICO claims). However, as detailed below, the Court finds that there are sufficient allegations in the Plaintiffs' FAC to describe their injury and Defendants' fraudulent conduct.

        1.    Enterprise

An "enterprise" under RICO is a "group of persons associated together for a common purpose of engaging in a course of conduct . . . . proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). Here the alleged enterprise is the corporation Mega Lighting. (FAC ¶ 68.) A corporation can constitute the "enterprise," 18 U.S.C. § 1961(4), and corporate employees or

8

owners may use the corporation in a manner that violates RICO, § 1962(c).  See also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 164-165 (2001).  Plaintiffs allege that the Individual Mega Defendants used the Mega Lighting entity in order to obtain public works projects from public agencies, and then defrauded those agencies and their employees by under-reporting and underpaying wages.  Again, in their attachment to the FAC, Plaintiffs provide specific evidence from 2008 of wages certified to public agencies, versus amounts actually paid by the Mega Defendants to Plaintiffs.  While Plaintiffs do not provide the specific public agency to which the misrepresentations were made, these allegations are still sufficient to give Defendants "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

Defendants argue that there is insufficient particularity as to the participation of the Individual Mega Defendants in the affairs of the enterprise.  However, as noted by Plaintiffs, the Individual Mega Defendants are an owner, director, and two managerial employees.  (FAC ¶ 28-31.)  Plaintiffs further allege that these specific persons were involved in the defrauding of public agencies, employees, and threatening employees in order to force them to waive legal rights.  (FAC ¶¶ 80-82.)  This is sufficient to allege participation in the affairs of the enterprise for the purposes of RICO.  See Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)("In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs . . . . RICO liability is not

limited to those with primary responsibility for the enterprise's affairs . . . but some part in directing the enterprise's affairs is required.").

### 2. Conduct

Plaintiffs allege that the "conduct" of Mega Lighting includes (1) concealing wage violations by falsifying certified payrolls and (2) threatening employees in order to obtain employee waivers of the right to remedy wage violations and in order to obtain payment on projects by falsely representing to municipalities that all workers had been adequately paid. (FAC ¶¶ 68, 81-82, 87-89.) Again, attached to their complaint, Plaintiffs provide an exhibit which specifically describes the amount of pay withheld from Plaintiffs for a period of two months in 2008, by falsely reducing the amount of hours worked compared to what was reported. (FAC Ex. A.) Plaintiffs also allege seventeen specific projects where they allege they were not paid the prevailing wage. (FAC ¶ 41.) Plaintiffs further describe a specific day, October 22, 2008, when Saad, Kasbar, Rameh, and Zavala refused to turn over Plaintiffs' paychecks until they signed documents that Plaintiffs believed were releases or waivers. (FAC ¶¶ 81-82.) Plaintiffs were unable to read or understand these documents. However, for the purposes of this motion it is reasonable to infer these documents were waivers, as alleged by Plaintiffs, because the Individual Mega Defendants refused to describe or provide copies of the documents to Plaintiffs after Plaintiffs had signed them.

As such, the Court finds that Plaintiffs have alleged Mega Lighting's conduct with sufficient particularity.

### 3. Pattern

10

A "pattern" under RICO involves at least two related, predicate acts over the course of 10 years. 18 U.S.C. § 1961(5). In order to establish a pattern, Plaintiffs must demonstrate that the racketeering predicates "amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). The "pattern" alleged by Plaintiffs are unlawful wages and the certification of false payroll records in at least seventeen projects extending over the course of three years. (FAC ¶ 41.) These acts are thus related and have the same or similar purpose and "methods of commission." H. J. Inc., 492 U.S. at 240. Plaintiffs also allege that the pattern is continuing, because the Mega Employer Defendants required Plaintiffs to sign waivers of their right to remedy any violations. (FAC ¶¶ 81-82.) Accordingly, the Court finds that there is a pattern of activity for the purposes of this motion.

### 4. Racketeering Activity

RICO defines racketeering activity as various enumerated "predicate acts," including extortion, wire fraud, and mail fraud. 18 U.S.C. § 1961(1).

#### a. Mail and Wire Fraud

Mail fraud involves: (1) the "existence of a scheme to defraud, and (2) using or causing[5] the use of the mails in furtherance of the scheme." United States v. Stein, 37 F.3d 1407, 1408 (9th Cir. 1994). Similarly, wire fraud has three elements:

---

[5] The second element also requires that: (1) "the defendant caused the mail to be used and 2) the mailings be sufficiently closely related to the scheme." Stein, 37 F.3d at 1408.

11

(1) "a scheme to defraud, (2) use of the wires in furtherance of the scheme and (3) a specific intent to deceive or defraud." United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001)(citing United States v. Blinder, 10 F.3d 1468, 1472 (9th Cir. 1993)).

As alleged in the FAC and described above, Defendants' scheme involves underpaying workers and misreporting the workers' true hours to public agencies, in order to receive payment from those agencies without penalty. Plaintiffs allege that falsified payroll reports, signed under penalty of perjury, were sent by the mail or fax to public agencies. (FAC ¶¶ 91-93.)

The Mega Defendants argue that there is no mail or wire fraud predicate, because Plaintiffs did not rely on the misrepresentations Defendants made to the public agencies. However, "[u]sing the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2138 (2008).

Again, Plaintiffs have provided specific evidence of the hours reported versus the hours actually worked during a three month period in 2008, and allegations relating to seventeen specific projects. (FAC ¶ 41, Ex. A.) Accordingly, the Court finds that Plaintiffs have stated sufficient allegations of mail and wire fraud for the purposes of this motion.

          b.   <u>Extortion</u>

Extortion is a predicate act where it is "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Extortion is punishable by over one year's

imprisonment in California, Cal. Pen. Code § 520, and is defined as the "obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." Cal. Pen. Code § 518.

Plaintiffs allege that they were forced to sign waivers of their rights to enforce labor laws under threat of termination, delayed payment of wages, or (in one instance) bodily harm. (FAC ¶¶ 73, 79, 81-82.)

The Court finds that this is sufficient to plead extortion under RICO.

### 5. Injury and Causation

Lastly, Plaintiffs must show (1) their injury was proximately caused by Defendants' fraudulent conduct and (2) concrete financial loss by documenting the amount of damages. Fireman's Fund Ins. Co., 258 F.3d at 1021.

Lost wages constitute a form of injury under RICO; and an employer who fraudulently depresses wages to gain commercial advantage causes this injury. Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1170 (9th Cir. 2002)("They allege that the scheme had the purpose and direct result of depressing the wages paid to them by the growers. Thus, as the district court correctly determined, 'plaintiffs have stated a claim that they are the direct victims of the illegal hiring scheme.'"). Here, Plaintiffs allege that they were paid significantly less than owed over a period of three years, over the course of at least 17 projects. (FAC ¶ 41; Ex. A.)

The Mega Defendants cite to Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458 (2006) for the proposition that Plaintiffs are

13

only the indirect victims of any fraudulent behavior, which was directed toward the public agencies. However, Anza is distinguishable. In that case, the plaintiff was a competitor of defendant's, and unable to show direct injury from defendant's tax evasion. See id. ("The direct victim of this conduct was the [State], not [plaintiff]. It was the State that was being defrauded and the State that lost tax revenue as a result."). Here, both the public agencies and employees are simultaneously being defrauded and injured as a part of the same scheme by Defendants. The purpose of the scheme was and is to defraud both Plaintiffs and the public agencies by under-reporting and under-paying wages, then attempting to conceal this violation by threatening employees.

Defendants argue that RICO claims here merely involve multiple preparatory acts leading to a "single scheme." See, e.g., Selman v. American Sports Underwriters, Inc., 697 F. Supp. 225, 232 (W.D. Va. 1988). Again, Plaintiffs plead a wide-ranging series of contracts where the Mega Defendants defrauded both numerous cities and employees.

Accordingly, Plaintiffs have established both concrete loss and causation.

**IV. CONCLUSION**

The Court DENIES the motion to dismiss and Plaintiffs' request for discovery.

IT IS SO ORDERED.

Dated: April 6, 2009

DEAN D. PREGERSON
United States District Judge